# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
In re:                                                                                        Case No. 24-11171 (PB)

ADRIANA CORBEN,                                                                   Chapter 13

                            Debtor.
---------------------------------------------------------------X

APPEARANCES:

| | |
|---|---|
| For the Debtor: | Cushner & Associates, P.C.<br>By:  TODD S. CUSHNER, ESQ.<br>399 Knollwood Road, Suite 205<br>White Plains, NY 10603<br>(914) 600-5502 |
| For the Trustee: | Office of the Standing Chapter 13 Trustee<br>By:  THOMAS C. FROST, ESQ.<br>399 Knollwood Road, Suite 102<br>White Plains, NY 10603<br>(914) 328-6333 |
| For Bradley Corben: | Lieber & Lieber, Esq.<br>By:  BARBIE DAWN LIEBER, ESQ.<br>1 Great Neck Road, Suite<br>Great Neck, NY 11021<br>(917) 414-1190 |

## **MODIFIED BENCH RULING ON MOTIONS TO DISMISS**

Hon. Philip Bentley
United States Bankruptcy Judge

      Before the Court are three motions to dismiss this chapter 13 bankruptcy: motions to dismiss filed by the chapter 13 trustee and by the Debtor's ex-husband, Bradley Corben, and the Debtor's motion for an order approving the voluntary dismissal of her bankruptcy. Mr. Corben's motion asks that the dismissal be with prejudice—that is, with a bar to future bankruptcy filings by the Debtor—on the ground that the Debtor filed and prosecuted her bankruptcy in bad faith.

Because the Debtor herself has asked to dismiss the bankruptcy, there is no dispute that dismissal is warranted. However, her ex-husband's request that dismissal be with prejudice raises both factual and legal issues. Factually, the parties dispute whether the Debtor acted in bad faith. For the reasons I will explain below, I find that the Debtor did act in bad faith, both in filing this bankruptcy and in failing to comply with basic chapter 13 requirements.

As a legal matter, the request for a dismissal with prejudice raises several significant issues. When a chapter 13 debtor alleged to have filed in bad faith seeks to dismiss her bankruptcy voluntarily, does the court have the power to impose conditions on the dismissal—or more precisely, to include provisions in the dismissal order restricting either the debtor's ability to file future bankruptcy cases or the application of the automatic stay in future cases? If the court does have that power, what restrictions are most appropriate? In this circuit, answering these questions requires consideration of two Second Circuit decisions, *In re Casse*, 198 F.3d 327 (2d Cir. 1999), and *In re Barbieri*, 199 F.3d 616 (2d Cir. 1999), that bear on, but do not fully resolve, these issues.

The Court concludes that it has broad discretion to include appropriate restrictions in the dismissal order, notwithstanding the Debtor's voluntary dismissal. Moreover, in this case, the most appropriate restriction is not a bar on future bankruptcy filings, but instead a more tailored remedy: a limitation on the automatic stay in any future bankruptcies the Debtor may file over the next two years. Specifically, in any such bankruptcy, the automatic stay will not apply to any action to enforce the Debtor's obligations to her ex-husband unless and until the Debtor shows cause to reimpose the stay.

In the Court's view, this remedy is superior—in this case and perhaps many others—to the more common approach of barring future bankruptcy filings by the debtor. Lacking a crystal ball, it is impossible to know whether developments over the next year or two might give rise to a

2

genuine need for bankruptcy relief by the Debtor, even though no such need appears to exist now. The limited remedy we impose preserves the Debtor's right to seek such relief if it turns out to be needed. At the same time, this remedy strips the Debtor of the ability to employ the automatic stay for abusive purposes a second time, since the stay will not take effect absent a judicial finding of cause.

## **Factual Background**[1]

This bankruptcy arises out of the Debtor's repeated violations of her obligations to her ex-husband under a March 2021 divorce judgment. That judgment required Mr. and Mrs. Corben to separate their retirement assets pursuant to a qualified domestic relations order. Because Ms. Corben's retirement assets were greater than Mr. Corben's, the judgment required her to transfer approximately $155,000 of her retirement assets to him. At the time, the balance of her retirement account was more than three times that sum.

Ms. Corben chose to violate the divorce judgment's plain terms. She transferred none of her retirement assets to her ex-husband, but instead withdrew the great bulk of those assets and used them to pay personal obligations of her own. As a result, by the time a hearing to address her actions was held in April 2024 before Justice Ariel Chesler of New York State Supreme Court, New York County, only $59,000 remained in her retirement account. At that hearing, the Debtor admitted she had made these unauthorized withdrawals and offered no justification for having done so. At the conclusion of the April 2024 hearing, Justice Chesler entered an order directing

---

[1] A hearing on the three motions before the Court was held on November 14, 2024. At the outset of the hearing, the Court asked the parties if they wished to put on testimony or instead to rest on their papers. All three parties waived any right to put on testimony or other evidence. The Court's factual findings therefore are based on the parties' motion papers, including the annexed exhibits. Most of the relevant facts, including all those concerning pre-bankruptcy events, are undisputed.

The Court issued its bench ruling on November 15. On December 6, the Court entered an order dismissing the bankruptcy and limiting the automatic stay in any future bankruptcy the Debtor might file within the next two years. This decision formalizes and expands upon the Court's November 15, 2024 bench ruling.

3

Ms. Corben to take immediate steps to rectify her violations of the divorce judgment. Specifically, the order directed Ms. Corben first to transfer the $59,000 that remained in her retirement account to Mr. Corben and then, within 60 days, to raise the balance of the $155,000 she owed and transfer that sum to him.

Ms. Corben failed to comply with either of these directives. As a result, Justice Chesler ordered Ms. Corben to appear at a July 1, 2024 hearing to show cause why she should not be held in contempt. At the conclusion of that hearing, Justice Chesler entered an order holding Ms. Corben in civil contempt and sentencing her to weekend incarceration at Rikers Island for six months or until she complied with the April order.

Ms. Corben's response was to file this chapter 13 case two days later, on July 3, and then to file a TRO application requesting an order that the automatic stay barred implementation of the contempt order. Ms. Corben contended that incarceration would be "life-threatening" for her, because she was undergoing chemotherapy treatment for cancer and, in addition, suffered from acute high blood pressure. The Court granted the Debtor's application, holding that the automatic stay bars the enforcement of civil contempt orders. As a result, the Debtor's incarceration was stayed for the remainder of this bankruptcy case.

On October 21, 2024, Mr. Corben filed a motion seeking dismissal of the bankruptcy with prejudice. He contended that she had acted in bad faith in multiple ways: by filing for bankruptcy to avoid the consequences of her deliberate violations of the state court judgment and order; by choosing to file under chapter 13 despite knowing she did not qualify to be a debtor under that chapter; and by deliberately falsifying the information she provided in her bankruptcy schedules.

With respect to the Debtor's eligibility for chapter 13, Mr. Corben alleged that Ms. Corben knew that her total liquidated non-contingent debts exceeded the debt limit imposed by Bankruptcy

4

Code § 109(e). He pointed out that, while Ms. Corben's schedules listed about $460,000 in unsecured claims (just below section 109(e)'s $465,275 debt limit for such claims), the claims register showed a substantially larger total amount of filed claims (approximately $577,000). Moreover, a number of discrepancies concerning the scheduled claim amounts suggested that the Debtor may have fraudulently understated her debts so as to stay under the chapter 13 debt limit. At the November 14 hearing, the Debtor's counsel candidly admitted that "there [was] no question" that his client's debts exceeded chapter 13's eligibility requirements, and he made little attempt to dispute the allegation that she had intentionally understated her debts.

Mr. Corben alleged that the Debtor misrepresented her finances in other respects as well. For example, he claimed she understated her income and overstated her expenses in an attempt to minimize the amount she would have to pay under a chapter 13 plan. The Debtor made no attempt to rebut most of these allegations, which Mr. Corben supported with significant documentary evidence.

The trustee filed his motion to dismiss on October 28, 2024, seeking dismissal for cause under Code § 1307(c) on the ground that the Debtor had failed to comply with many of her obligations as a chapter 13 debtor. For example, the Debtor had failed to provide copies of bank account statements or federal income tax returns, to file a domestic support obligation certification or a credit counseling certificate, or to appear at her meeting of creditors under Code § 341. In addition, during the more than four months of her bankruptcy, she had made no payments to the trustee, despite having filed a plan that provided for $8,000 per month in required payments. The Debtor did not dispute these allegations.

Ms. Corben filed no response to either of these motions. Instead, she filed a one-sentence motion on November 8, stating that she sought leave to dismiss her chapter 13 case voluntarily.

5

## Discussion

### The Debtor's Bad Faith

The undisputed facts demonstrate that the Debtor filed her bankruptcy in bad faith.

Even if the Debtor had fully complied with chapter 13's eligibility and other requirements, the circumstances of her bankruptcy filing would probably be sufficient in themselves to warrant a finding of bad faith. Such a finding may be warranted when a debtor seeks, through her bankruptcy filing, to continue her prepetition misconduct or to shield it from redress. Indeed, in *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007), the Supreme Court affirmed a bad faith finding that rested mainly on the debtor's prepetition misconduct. *See id.,* 549 U.S. at 367–368, 373. Here, the Debtor engaged in prepetition conduct so egregious that the state court entered an order of incarceration, which she has not appealed. By filing for bankruptcy, the Debtor sought to avoid that penalty and to continue to violate her undisputed obligations under the divorce judgment.

Moreover, the Debtor's actions in the bankruptcy showed a continued disregard for her legal obligations. She chose to file under chapter 13 even though, as her counsel later admitted, there was "no question" her debts exceeded the chapter's statutory debt limit. She then failed to comply with chapter 13's reporting requirements, while making not a single plan payment during the four months of her bankruptcy. Collectively, these facts suggest that the Debtor lacked a good faith intent to reorganize. Together with the circumstances of her filing, they clearly warrant a finding of bad faith.

### Fashioning a Proper Remedy

Dismissal of a bankruptcy does not, by itself, bar the debtor from filing again or limit the debtor's rights in a future bankruptcy. Because some repeat filings by individual debtors are

6

entirely legitimate while others are not, Congress has wrestled for decades with the challenge of designing appropriate remedies to prevent abusive serial filings while permitting legitimate ones. In its 1984 and 2005 amendments to the Bankruptcy Code, Congress added a variety of provisions designed to curb bad faith repeat filings by individual debtors, including provisions limiting the debtor's eligibility to file future bankruptcies or limiting the future application of the automatic stay or the discharge of debts in specific circumstances. *See, e.g.,* Code § 109(g) (180-day bar on future bankruptcy filings by individual debtors in two specific circumstances); § 362(b)(21)(A) & (B) (no automatic stay if debtor files in violation of § 109(g) or of order dismissing prior bankruptcy with prejudice); § 362(c)(3) (automatic stay lasts only 30 days, absent good faith showing, if debtor's prior bankruptcy was dismissed within past year); § 362(c)(4) (no automatic stay, absent good faith showing, if two prior bankruptcies were dismissed within past year); *see generally* Charles J. Tabb, *Law of Bankruptcy* §§ 2.18, 3.16 (5th ed. 2020).

These provisions have proved far from satisfactory. In addition to being needlessly complex, the hodgepodge nature of the provisions has left ample opportunity for abusive repeat filings by bad-faith debtors, while also imposing unfortunate costs on good-faith debtors. As stated in the report of the ABI's Commission on Consumer Bankruptcy,

> the result [of the 1984 and 2005 repeat-filer amendments] has been a jumble of provisions that do not work well together. The bankruptcy system and creditors do not always receive the protection they should from abusive repeat filings. Debtors acting in good faith have to incur costs to deal with overly broad provisions.

*Final Report of ABI Commission on Consumer Bankruptcy*, Am. Bankr. Inst. 69 (2019) ("ABI Report"); *see also id.* at 69–70 (recommending amendments to Bankruptcy Code's repeat-filer provisions, including amending section 109(g) to expressly authorize bankruptcy courts to dismiss bad faith filings with prejudice).

Few would deny that the Bankruptcy Code's repeat-filer provisions could benefit from

7

Congressional amendment. At the same time, the Code as currently written gives bankruptcy judges ample power to police abusive future filings when, as here, the court finds the debtor has filed in bad faith. The Second Circuit, joined by a number of courts in other circuits, has held that bankruptcy courts have the power to dismiss a bad faith bankruptcy with prejudice, *i.e.*, with a bar on future filings. Moreover, while few courts appear to have considered the less drastic remedy awarded here—allowing the debtor to file again but limiting the automatic stay in future cases—this remedy is even more clearly authorized by the Bankruptcy Code. And because of its flexibility, this remedy may be warranted in a broader range of cases than the more common remedy of barring future bankruptcy filings. Finally, a debtor's request to voluntarily dismiss her bankruptcy does not strip the court of the power to grant relief of this sort.

    **1. As the Second Circuit has held, the Bankruptcy Code permits bankruptcy courts to dismiss bad faith bankruptcies with prejudice to future filings**

In *In re Casse*, 198 F.3d 327 (2d Cir. 1999), the Second Circuit held that the Bankruptcy Code authorizes bankruptcy courts to dismiss bankruptcies filed in bad faith "with prejudice," that is, with a bar on future filings beyond the 180-day period contemplated by Code § 109(g). In so holding, the Court of Appeals rejected the Tenth Circuit's contrary decision in *Frieouf v. United States (In re Frieouf)*, 938 F.2d 1099 (10th Cir. 1991), which had construed Code § 349(a) to bar bankruptcy courts from imposing limits on the debtor's future filings beyond the specific limits set by Code § 109(g).

The challenge faced by the two courts of appeal was how to construe the less-than-clear text of section 349(a), which addresses the effects of an order dismissing a bankruptcy:

> (a) *Unless the court, for cause, orders otherwise,* the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

8

11 U.S.C. § 349(a) (emphasis added). Specifically, does subsection (a)'s initial phrase, italicized above, qualify only the first clause of section 349(a)—that is, the provisions addressing a dismissal's effect on the debtor's later discharge? Or does it also qualify the clause that follows the semicolon, concerning restrictions on the debtor's future bankruptcy filings? And if the initial phrase qualifies only the first clause, must the (unqualified) second clause be read to bar bankruptcy courts from imposing restrictions on the debtor's future filings beyond those already imposed by section 109(g)?

The Tenth Circuit, in *Frieouf*, held that the meaning of section 349(a) was plain: The section's "two clauses were separated by a semicolon and addressed two distinct concerns," and therefore the only defensible grammatical reading of the section was that its initial phrase qualified only the clause before the semicolon, not the subsequent clause. 938 F.2d at 1103. Consequently, section 349(a) prohibited courts from barring future bankruptcy filings except in the specific circumstances, and for the specific time period, provided by section 109(g). Quoting the Supreme Court's then-recent *Ron Pair* decision, the panel concluded that section 349(a)'s punctuation was dispositive: "The Supreme Court has instructed that a statute must be read as 'mandated by [its] grammatical structure.'" *Id.* (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989)).[2]

In rejecting this reading of section 349(a), the Second Circuit noted that no other circuit court had followed *Frieouf*, nor had any lower courts outside the Tenth Circuit. *Casse*, 198 F.3d at

---

[2] The panel also found, as a further ground for its decision, that a dismissal order barring the debtor from all access to bankruptcy relief for a period greater than 180 days was a "harsh" and "extraordinary" remedy, which "encroache[d] on the fifth amendment's due process and equal protection guarantees." 938 F.2d at 1103-04. In the panel's view, these "serious constitutional concerns" were a further reason to construe § 349(a) to bar such relief. *Id.* The Second Circuit, in *Casse*, did not respond to this point.

336–37. Rather than engaging in a debate over the punctuation or wording of section 349(a), the court focused instead on the disconnect between the Tenth Circuit's interpretation and the broader purposes served by the relevant 1984 Bankruptcy Code amendments, which both added section 109(g) and amended section 349(a) to add the second clause:

> When one considers that Congress intended § 109(g) to give bankruptcy courts an additional weapon for use against serial filers, it is perverse to construe the section as striking from the courts' hands other sections of the Code [*e.g.*, § 105(a)] which may remedy the same problem.

*Id.* at 340. Principally on this ground, the Second Circuit concluded that section 349(a) does not limit the broad discretionary power that Code § 105(a) gives bankruptcy courts "'to enjoin future filings to prevent abuse of the bankruptcy process.'" *Id.* at 336 (quoting *In re Earl*, 140 B.R. 728, 741 (Bankr. N.D. Ind. 1992)).

The Second Circuit has not revisited *Casse*, and it remains the law of this circuit. Moreover, outside of the Tenth Circuit, a number of courts have joined *Casse* in recognizing the bankruptcy courts' power to dismiss bad faith bankruptcy cases with prejudice. *See, e.g., Landis v. Ortega (In re Ortega)*, 2011 WL 10723285, at *6 (Bankr. E.D. Cal. 2011) ("Bad faith is cause for dismissal with prejudice under section 349(a)"); *In re Rusher*, 283 B.R. 544, 548 (Bankr. W.D. Mo. 2002) ("Sections 105(a) and 349(a) can be used conjunctively to enjoin a serial filer from filing yet another bankruptcy petition for a period of time in excess of 180 days."); *see also* ABI Report at 68 ("it has become somewhat common for courts to enter orders of dismissal 'with prejudice,' prohibiting the filing of a new bankruptcy case for longer than the 180-day period specified in section 109(g).").

For the many courts outside the Second and Tenth Circuits that have not yet ruled on the *Casse*/*Frieouf* issue, it bears note that two independent legal developments that have occurred in the quarter-century since *Casse* appear to provide further support for the Second Circuit's ruling.

10

*First*, the Supreme Court's statutory construction jurisprudence has evolved. As noted, the Tenth Circuit's construction of section 349(a) rested heavily on the Supreme Court's then-recent *Ron Pair* decision, which held that courts should give controlling effect to the "grammatical structure" of statutory text. *Frieouf*, 938 F.2d at 1103 (quoting *Ron Pair*, 489 U.S. at 241). More recent Supreme Court decisions, such as *King v. Burwell*, 576 U.S. 473 (2015), have adopted a more flexible approach to statutory construction, giving less weight to the precise text and punctuation of isolated provisions and more weight to the purposes evident in the statute as a whole. While the Second Circuit's approach in *Casse* may be in tension with *Ron Pair*, it is strikingly in accord with the approach taken by the Supreme Court in *King v. Burwell*.[3]

*Second*, it appears that, by its 2005 amendments to the Bankruptcy Code—specifically, the addition of Code § 362(b)(21)(B)—Congress may have ratified *Casse* and rejected *Frieouf*.[4] As noted above, the 2005 amendments added a number of Code provisions designed to curb bad faith serial filings, principally by limiting the automatic stay for repeat filers. One of these new provisions, Code § 362(b)(21), provides that the automatic stay does not apply to any action to

---

[3] In *King*, the Court construed a key provision of the Affordable Care Act in a manner that furthered the statute's overall purposes but arguably contravened the provision's plain meaning. While acknowledging that the construction it adopted was contrary to "the most natural reading of the pertinent statutory phrase" when "viewed in isolation," 576 U.S. at 497, the Court found the provision to be ambiguous when viewed in the context of the statute as a whole:

> [O]ftentimes the "meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." So when deciding whether the language is plain, we must read the words "in their context and with a view to their place in the overall statutory scheme."

*Id.* at 486 (citations omitted); *see also id.* at 498 ("A fair reading of legislation demands a fair understanding of the legislative plan."); *see generally* Abbe R. Gluck, *Imperfect Statutes, Imperfect Courts: Understanding Congress's Plan in the Era of Unorthodox Lawmaking*, 129 HARV. L. REV. 62, 91 (2015) (noting that *King*, like many modern statutory construction canons, recognizes "that statutes are meant to work" and that courts therefore should "find Congress's purposes in the ways in which statutory provisions operate together"). This approach—looking to the statute as a whole to determine whether the provision in question is ambiguous or plain—is, at bottom, the approach the Second Circuit took in *Casse*.

[4] The parties have not briefed this issue, nor is the Court aware of any commentary or case law addressing this point. As a result, the Court's understanding of the issue may be incomplete. But absent circumstances or authority not brought to the Court's attention, this point appears to be dispositive.

11

enforce a lien on real property if (A) the debtor is ineligible under section 109(g) to be a debtor, or (B) the bankruptcy was filed in violation of a prior bankruptcy court order prohibiting the debtor from filing again—that is, an order dismissing the prior bankruptcy with prejudice. *See* 11 U.S.C. § 362(b)(21)(A), (B).[5] By expressly recognizing with-prejudice dismissal orders and giving them effect, Congress appears to have rejected *Frieouf*'s holding that the Bankruptcy Code bars the issuance of such orders and to have ratified *Casse*'s contrary holding. *See, e.g., In re Empire Equities Cap. Corp.*, 405 B.R. 687, 691 (Bankr. S.D.N.Y. 2009) ("Congress is presumed to act with knowledge of existing judicial precedent when enacting legislation.") (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 381–82 (1982)).

**2. Provisions limiting the automatic stay in future bankruptcy cases are also authorized by the Bankruptcy Code and often are preferable to the less flexible remedy of barring future bankruptcy filings**

There can be little doubt that bankruptcy courts have the power to issue the less drastic version of dismissals with prejudice at issue here—provisions that, instead of barring future bankruptcy filings, limit the application of the automatic stay in future cases.[6] As the Second Circuit held in *Casse*, Bankruptcy Code § 105(a) gives bankruptcy courts broad powers "to enjoin

---

[5] Congress enacted Code § 362(b)(21) after it became apparent that merely barring a debtor from filing again is not always sufficient:

> Even if a debtor is not "eligible" [to re-file for bankruptcy], most courts have held that a filing by such a debtor is not a jurisdictional defect, and that means that the debtor still gets the benefit of the stay, even if only for a short while—which is all the debtor needs to make the mortgagee start over in foreclosure.

Code § 362(b)(21)(A) and (B) counter this problem by providing that a bankruptcy filing prohibited either by Code § 109(g) or by a prior dismissal with prejudice will not trigger the stay, even briefly. *See* Tabb, *Law of Bankruptcy* § 3.16.

[6] This remedy appears to be relatively novel. The Court is indebted to a 1996 decision by Judge Stuart Bernstein that granted similar relief. *In re Greenberg*, 200 B.R. 763, 768-70 (Bankr. S.D.N.Y. 1996). To the Court's surprise, no later courts appear to have cited *Greenberg* as authority for dismissal order provisions limiting the automatic stay in future bankruptcies. Moreover, *Greenberg*'s precedential value on this point is limited, both because of the case's age—it pre-dated both *Casse* and the 2005 Bankruptcy Code amendments—and because its discussion of the legal basis for provisions of this sort (addressed further in Point 3 below) is very brief.

12

future filings to prevent abuse of the bankruptcy process," 198 F.3d at 336 (internal quotation omitted), so long as these powers are not "'exercised in a manner that is inconsistent with the other, more specific provisions of the Code,'" *id.* (quoting *Frieouf*, 938 F.2d at 1103 n. 4).

A section 105(a) order limiting the automatic stay in future cases is not "inconsistent with [any] other, more specific provisions of the Code." In the first place, such an order does not contravene section 349(a). While it is debatable whether the language of that section even applies to such orders,[7] it is clear is that, if it were read to do so, *Casse*'s holding that section 349(a) does not bar dismissals with prejudice would extend equally to this less drastic sort of dismissal with prejudice. Nor does any other Bankruptcy Code section specifically restrict the courts' section 105(a) power to enter such orders. To be sure, such orders do modify the otherwise-automatic effect of Code § 362 in future cases. But that is a far cry from contravening a Code provision that specifically bars such modifications—that is, a provision comparable to section 349(a) as construed by the *Frieouf* court. Because no Code provision bars courts from imposing limitations on the automatic stay as a sanction for bad faith filings, remedies of this sort fall squarely within the bankruptcy courts' broad powers to enter orders "necessary or appropriate . . . to prevent an abuse of process." 11 U.S.C. § 105(a).

Importantly, remedies of this sort are preferable to standard dismissals with prejudice if one takes seriously the policy concerns raised by the *Frieouf* panel. As that court held, an absolute bar on a debtor's future bankruptcy filings is "a harsh remedy," a deprivation of judicial access so severe as to potentially raise constitutional due process or equal protection issues. *Frieouf*, 938 F.2d at 1103–04. In the Court's view, these are significant concerns: No matter how abusive a

---

[7] The relevant language of § 349(a) refers to dismissal orders that "prejudice the debtor with regard to the filing of a subsequent petition." A dismissal order that limits the automatic stay in future cases does not seem to be an order of that sort, since it prejudices the debtor with respect to its rights in a future case, rather than with regard to the filing of a subsequent petition.

13

debtor's conduct may have been to date, no one can predict what the future will bring. Circumstances may arise that cause the debtor to have a legitimate need for bankruptcy relief. Consequently, an absolute bar on future bankruptcy filings is inherently problematic. Far better is a flexible remedy that enables the court in a future case to provide relief to the debtor as needed, while stripping the debtor of her ability to abuse the automatic stay a second time.

The specific remedy adopted here—a provision that, in any bankruptcy the Debtor files within the next two years, the automatic stay will not apply unless and until she demonstrates cause—serves these purposes well. By making the stay no longer automatic, this approach takes away tool # 1 in the serial filer's arsenal. At the same time, the bankruptcy court in any new case will retain complete flexibility to respond to the needs of the Debtor and her creditors as they arise, including by reimposing the stay if that turns out to be warranted.[8]

In addition to being less draconian to debtors, relief of the sort granted here protects legitimate creditor interests far more effectively than the remedies provided by Bankruptcy Code § 362(c)(3). As noted, that provision terminates the automatic stay after 30 days, absent a showing of good faith, if the debtor's bankruptcy was dismissed within the prior year. However, as the ABI's Consumer Bankruptcy Report notes, most courts have construed section 362(c)(3) in a manner that "offers no benefit to a mortgage holder or auto lender":

> Because it provides that the automatic stay "terminates with respect to the debtor," paragraph (c)(3) has been especially problematic in its application. The majority of published decisions have interpreted this language to terminate the automatic stay only as to the non-estate property of the debtor so that collateral like automobiles and homes, being estate property, continue to be protected by the automatic stay after the 30-day termination.

---

[8] As noted above, the Debtor claims to have serious medical conditions that could be exacerbated by incarceration, potentially jeopardizing her health and her ability to earn a living. It is impossible to know whether these considerations, together with other future circumstances, might support entry of an order reimposing the stay if the Debtor were to file a second bankruptcy and to seek such an order. The remedy the Court has adopted gives the bankruptcy court presiding over any such future case full discretion to handle this issue as the facts warrant.

14

ABI Report at 68; *see also In re Smith*, 573 B.R. 298, 300–01 (Bankr. D. Me. 2017) (collecting the conflicting authorities). And even when the court construes section 362(c)(3) broadly, to terminate the stay as to estate as well as non-estate property, serious shortcomings remain:

- In many cases, the 30-day stay provided by section 362(c)(3) is sufficient, by itself, to accomplish a bad faith filer's goals, such as stopping a foreclosure sale. *See* n. 5 above (noting that even a brief stay may be "all the debtor needs to make the mortgagee start over in foreclosure").

- Moreover, when the debtor requests an extension, many courts rubber-stamp the request, with little or no scrutiny of whether it is warranted. *See* ABI Report at 69 (research shows that courts have "granted 98% of [debtors' stay extension motions under section 362(c)(3)], even when the motions provided no evidence of a 'substantial change in financial or personal affairs'") (quoting Sara S. Greene, *Failed Reform: Congressional Crackdown on Repeat Chapter 13 Bankruptcy Filers*, 89 Am. Bankr. L.J. 241, 252 n.47 (2015)).

The relief granted here should obviate each of these problems.

### 3. A chapter 13 debtor's voluntary dismissal motion does not strip the court of its power to grant appropriate relief

Chapter 13 bankruptcies are distinctive, most notably in requiring the debtor to commit her entire disposable income over a three- to five-year period to payment of her creditors. Cognizant of the involuntary-servitude-like aspects of this obligation, Congress took care to ensure that chapter 13 bankruptcies are entirely voluntary. A chapter 13 bankruptcy, unlike one under chapter 7 or chapter 11, cannot be commenced involuntarily. 11 U.S.C. § 303(a). Moreover, a chapter 13 debtor has the absolute right to dismiss her bankruptcy, or to convert it to a chapter 7 case, at any time. *Id.* § 1307(b) & (c); *see generally* Tabb, *Law of Bankruptcy* § 12.1 (discussing the concerns Congress expressed about involuntary servitude in 1978, but noting that these concerns may be

15

entitled to less weight following the 2005 Bankruptcy Code amendments, which added chapter 13's payment plan requirements to individual chapter 11 cases while also allowing such cases to be commenced involuntarily).

The Debtor contends that her request to voluntarily dismiss this case strips the Court of the power to put provisions in the dismissal order limiting the automatic stay in future cases. The Court disagrees. The Debtor did not request a voluntary dismissal until after both her ex-husband and the chapter 13 trustee had moved to dismiss the case, with Mr. Corben requesting a dismissal with prejudice. While the Debtor does have an unfettered right to dismiss her bankruptcy, she does not have the right to evade the consequences of her bad faith filing.

Judge Bernstein's *Greenberg* decision (discussed in n. 6 above) is closely on point. There, a secured creditor moved to convert a chapter 13 case to chapter 7 on bad faith grounds, and the debtor cross-moved to voluntarily dismiss her case. Judge Bernstein granted the debtor's cross-motion, holding that "[t]he plain language of the statute suggests that '[s]ection 1307(b) is mandatory and the court has no choice but to dismiss a Chapter 13 proceeding on the debtor's motion.'" *Greenberg*, 200 B.R. at 766 (citation omitted); *see also id.* at 767 ("The rationale is that chapter 13 is completely voluntary, and on both constitutional and policy grounds, no one should be compelled to work for her creditors."). At the same time, the court held, the absolute right of chapter 13 debtors to dismiss does not deprive courts of "their authority to attach strings to the dismissal," if warranted as a remedy for bad faith or other abuses. *Id.* at 767–68 (citing Code §§ 349(a) and 105(a), Bankruptcy Rule 9011, and the courts' inherent powers). The court therefore added provisions to the dismissal order identical in most respects to those granted here—that is, providing that if the debtor were to file another bankruptcy, the automatic stay would not apply to the secured creditor's actions to enforce its rights, absent an order reimposing the stay for cause.

16

24-11171-pb    Doc 42    Filed 02/25/25    Entered 02/25/25 15:38:43    Main Document
Pg 17 of 18

*Id.* at 770.

The Second Circuit's later decision in *In re Barbieri*, 199 F.3d 616 (2d Cir. 1999), does not undercut the bankruptcy courts' power to grant relief of this sort. *Barbieri* involved a chapter 13 debtor's request to dismiss her case after the bankruptcy court indicated its intent to convert the case to chapter 7 *sua sponte*. As in *Greenberg*, the Court of Appeals held that the debtor's right to dismiss was absolute, given the mandatory language of section 1307(b), as well as the underlying policy that a chapter 13 debtor should not be kept in bankruptcy against her will. *Id.* at 620. In a footnote, the Second Circuit cited *Greenberg* and noted, but did not decide, the issue before this Court:

> Faced with individual debtors filing and dismissing multiple Chapter 13 petitions in order to take advantage repeatedly of the Code's automatic stay provisions, some courts have imposed conditions upon future filing when granting these debtors' motions to dismiss. *See, e.g., . . . In re Greenberg*, 200 B.R. 763, 770 (Bankr. S.D.N.Y. 1996) (dismissing petition but providing that automatic stay provision would not apply to foreclosure or eviction actions by debtor's co-op in the event of future filings). We take no position on whether such conditions are permissible or whether they infringe on a debtor's absolute right to dismiss Chapter 13 petitions voluntarily. We note, however, that such conditions, if permissible, would serve as an additional powerful tool in preventing abuse.

*Id.* at 622 n. 8.

In the Court's view, the answer to the question the Court of Appeals chose not to decide in *Barbieri* is straightforward. Nothing in the text of section 1307(b) or the policies that provision serves is contravened by the inclusion of conditions in dismissal orders that either bar future bankruptcy filings by the debtor or limit the automatic stay's application in future bankruptcies. The text simply provides that the court "shall dismiss" a chapter 13 case if the debtor requests dismissal at any time before the case has been converted to another chapter. An order that "attach[es] strings to the dismissal," *Greenberg*, 200 B.R. at 767–68, is not inconsistent with this mandate. Most important, such an order does not undermine the policy that a chapter 13 debtor

17

should not be kept in bankruptcy against her will. Far from keeping the debtor in bankruptcy, provisions of this sort either keep the debtor out of bankruptcy (by barring future filings) or limit the debtor's ability to use future bankruptcies for improper purposes. Relief of this sort performs the vital function of policing the conduct of chapter 13 debtors—deterring and limiting abuses of the Bankruptcy Code—without diminishing the voluntary nature of chapter 13.

Dated: February 25, 2025
New York, New York

/s/ Philip Bentley
**Hon. Philip Bentley**
**United States Bankruptcy Judge**